William Thorpe (State Bar No. 005641)
*wthorpe@thorpewshwer.com*
Bree G. Nevarez (State Bar No. 035671)
*bnevarez@thorpeshwer.com*
THORPE SHWER, PC
3200 North Central Avenue, Suite 1560
Phoenix, Arizona 85012
Telephone: 602-682-6105

Lisa N. Neal (admitted *pro hac vice*)
*lneal@rutan.com*
Meredith L. Williams (admitted *pro hac vice*)
*mwilliams@rutan.com*
James R. Burrell (admitted *pro hac vice*)
*jburrell@rutan.com*
Asad Karamally (admitted *pro hac vice*)
*akaramally@rutan.com*
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor Irvine, California 92612
Phone: 714-641-5100

Hani Z. Sayed (admitted *pro hac vice*)
*hsayed@rutan.com*
RUTAN & TUCKER, LLP
16427 N. Scottsdale Road, Suite 260
Scottsdale, Arizona 85254
Telephone: 714-641-5100

*Attorneys for Plaintiff IDIQ*

W. Kyle Tayman (*pro hac vice*)
*ktayman@goodwinlaw.com*
Robert D. Carroll (*pro hac vice*)
*rcarroll@goodwinlaw.com*
Todd Marabella (pro hac vice)
*tmarabella@goodwinlaw.com*
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: (202) 346-4000
Fax: (202) 346-4444

100 Northern Avenue
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231

David E. Funkhouser III, Esq., Bar No. 022449
Jessica A. Gale, Esq., Bar No. 030583
SPENCER FANE LLP
2415 E. Camelback Road, Suite 600
Phoenix, AZ 85016-4251
Telephone: (602) 333-5451
Facsimile: (602) 333-5431
Email: *dfunkhouser@spencerfane.com*
*jgale@spencerfane.com*

*Attorneys for Defendant Rocket Mortgage, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Identity Intelligence Group, LLC, a Nevada limited liability company, d/b/a IDIQ,

Plaintiff,

vs.

Rocket Mortgage, LLC, a Michigan limited liability company,

Defendant.

Case No.: 2:22-cv-01272-MTL

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE**

Pursuant to the Paragraph 5(a) of the Scheduling Order [Dkt. 121] and the Court's Order during the March 21, 2023 Discovery Dispute Hearing (the "Hearing"), Rocket Mortgage, LLC ("Rocket") and Identity Intelligence Group, LLC's ("IDIQ") (collectively, the "parties") submit the following joint dispute statement:

## I. **ROCKET'S Position**:

In continuance of its ongoing campaign to delay discovery at every step and forsake its discovery obligations, IDIQ is refusing to comply with the Court's March 21, 2023 order ("Order"). This Court directed the parties to meet and confer regarding ESI searches for IDIQ to use for producing communications with its affiliates, among other documents, responsive to Rocket's Requests for Production ("RFPs"). Rocket proposed a set of search terms on March 23 and made multiple good faith attempts to negotiate with IDIQ regarding those terms that would capture relevant and responsive documents, while simultaneously balancing the proportionality and burden on IDIQ. Yet, IDIQ refuses to negotiate, in direct violation of the Court's Order. IDIQ refuses to provide information regarding (1) hit counts on Rocket's proposed search terms, (2) where it is collecting data from, (3) the search terms it is using, (4) a counter-proposal to Rocket's proposal, and (5) refuses to commit to a date for the production of the responsive documents the Court ordered it to produce. Instead, IDIQ served supplemental responses to certain of Rocket's RFPs, but conspicuously refused to supplement RFPs directed at communications with affiliates, documents concerning affiliates use of the Rocket Credit Scores name or logo, or payments to affiliates.

Rocket respectfully requests this Court order IDIQ to (1) search for documents using Rocket's proposed search terms; and (2) produce all responsive documents by April 24.

**Background**: During the Hearing, the Court ordered the parties to "continue to meet and confer with respect to the communications between IDIQ and its affiliates," noting that conferring on "word searching" is "a step in the right direction." *See* H'rg Tr. 44-46. Less than 48 hours later, on March 23, Rocket emailed IDIQ the following proposed ESI search terms to identify documents responsive to the RFPs subject to the Court's Order, which terms take into account the Court's direction as to the breadth of the requests:

- *rocket* OR RCS* OR *mortgage* or Quicken* or My3Scores*
- (audit* OR review* OR quality OR control OR monitor* OR oversight OR diligen* OR compli* OR assur* OR report* *direct* OR endors*) AND [Website name or affiliate names or affiliate email addresses or email domains]
- (pay* OR dollar* OR money OR deduct* OR reduct* OR purchas* OR sale* OR

enroll* OR net OR gross OR balance* OR P&S OR cancel* OR refer* OR consum* OR promot* OR adver* OR market* OR sign* OR host*) AND [Website name or affiliate names or affiliate email addresses or email domains]

- (boost* OR improv* OR rais* OR increase*) w/10 (score OR credit)

Rocket requested that IDIQ provide a counterproposal to the extent it disagreed with the proposed searches. IDIQ neither confirmed its agreement to Rocket's proposed terms nor provided a counterproposal. Rocket reiterated its request for a search term counterproposal on March 28. Again, IDIQ refused, but agreed to meet and confer on March 30.

When the parties met and conferred, IDIQ explained it was not prepared to discuss Rocket's proposed terms, could not provide hit counts on Rocket's proposed terms, and had no counterproposal. Among IDIQ's list of excuses as to why—after having Rocket's proposal for a week—it could not have a meaningful discussion was because it was supposedly building a dataset using searches different from (and narrower than) terms proposed by Rocket, ingesting the dataset into its review system was taking time, and only after that process was complete would it be able to run searches for responsive documents. Accepting IDIQ's representations as to the difficulty of the collection, Rocket requested that IDIQ commit to sharing information regarding (1) the sources from which it is collecting documents; (2) the hit counts for Rocket's proposed terms; (3) IDIQ's counterproposal; and (4) confirmation that IDIQ would run "rocket" as a standalone term. IDIQ agreed to share a counter proposal on search terms and hit counts for Rocket's proposed search terms, but refused to make any other commitments.

On March 31, IDIQ unilaterally filed a Discovery Status Report (despite Rocket's request to file a joint status report), where it represented to the court as follows:

> IDIQ requires additional time to consider and provide proposed search terms. IDIQ believes it should be in a position to provide such search terms for Rocket Mortgage's consideration on or before Friday, April 7. In addition, IDIQ agreed to provide hit counts for certain proposed search terms upon completion of IDIQ's document search and processing and anticipates providing hit counts for certain search terms on or before April 7.

D.I. 166 at 3. On April 5, almost two weeks after sending its search term proposal, Rocket again requested IDIQ's search term counterproposal and hit counts for Rocket's proposed

terms. IDIQ responded it had collected an "initial data set" of "33,924 records" using three terms: "rocket mortgage"; "!rocketcredit!"; and "rocket credit." IDIQ further represented that "it is extremely unlikely that all of these records are relevant and responsive."

In response, Rocket reiterated its request that IDIQ describe from where it is collecting documents so that Rocket can assess the sufficiency of the collection. Rocket repeated its request that IDIQ run the term "rocket" as a standalone term, pointing to IDIQ testimony during the Preliminary Injunction hearing that its affiliates refer to RocketCreditScores domain as "the Rocket offer," (Hearing Tr. (Sept. 6, 2022) at 144:1-9 (Peranski)), and a communication produced by an IDIQ affiliate where the affiliate describes the "Rocket Credit Score" mark and logo as the "Rocket brand," both of which demonstrate IDIQ was using underinclusive search terms to collect documents. Rocket also asked IDIQ to explain its use of the term "records." Finally, Rocket asked IDIQ to provide examples of documents hitting on its proposed terms that would not be relevant to this litigation, so Rocket could understand why IDIQ was narrowing Rocket's proposed terms in its initial collection. IDIQ refused all of Rocket's requests. Instead, on April 6, IDIQ rescinded its offer to provide a counter-proposal on search terms or to provide hit counts on Rocket's proposed search terms, stating "IDIQ will instead opt to supplement its responses to Rocket['s] Requests for Production." This ran contrary to the Court's March 21 Order.

The parties met and conferred a final time on April 7, 2023, when IDIQ confirmed it was refusing to share with Rocket (1) the sources from which it is collecting data; (2) its proposed search terms against that initial collection; and (3) the hit counts for Rocket's proposed search terms. Furthermore, IDIQ refused to commit to searching the term "rocket" as a standalone term and refused to explain its reason for using narrower searches. Although it now claims it will use "rocket" as a search term, that is an empty representation because it made clear it did not use that term to collect documents that it is now searching.

When IDIQ served supplemental responses to certain RFPs, it refused to supplement its responses to six critical RFPs at issue at the Hearing (and discussed during each of the meet and confers): communications with affiliates related to the Rocket Credit Scores name

and logo (RFP Nos. 33-35), documents showing payments to affiliates related to the Rocket Credits Scores name and logo (RFP Nos. 36-37) and any monitoring of their affiliates (RFP No. 60). In short, IDIQ refuses to comply with this Court's March 21 order.

**Argument:** First, this Court should order that IDIQ use Rocket's proposed search terms. Rocket proposed search terms for the specific purpose of narrowing the scope of the RFPs at issue. In multiple meet and confers, IDIQ refused to commit to search for documents using the standalone term "rocket", despite Rocket pointing to a communication of an affiliate referring to "Rocket Credit Scores" name and logo as the "Rocket brand," and sworn IDIQ testimony that its affiliates refer to the RocketCreditScores domain as "the Rocket offer." For the first time, IDIQ now says it will use the term to "search", but still will not say what data set it will search it against, and made clear it did not use that term to collect the data it would then search, highlighting the inadequacy (and gamesmanship) of their proposal. If IDIQ is searching the term "rocket" against the initial collection it made using three terms—"rocket mortgage"; "!rocketcredit!"; and "rocket credit"—then IDIQ's proposal is meaningless as each term already contains the word "rocket." Rocket also requested that IDIQ search for RCS*, because IDIQ repeatedly refers to the Rocket Credit Scores brand and logo in its filings as "RCS". Rocket requested that IDIQ search for *mortgage* or Quicken* in the attempt to find communications with alternative references to Rocket Mortgage, the defendant and counterclaimant in this case. Rocket requested that IDIQ search for the following search terms in communications with affiliates—(audit* OR review* OR quality OR control OR monitor* OR oversight OR diligen* OR compli* OR assur* OR report* *direct* OR endors*)—in order to identify documents showing any monitoring or oversight efforts by IDIQ over its affiliates. Finally, Rocket asked that IDIQ search for the following search terms in documents with affiliates—(pay* OR dollar* OR money OR deduct* OR reduct* OR purchas* OR sale* OR enroll* OR net OR gross OR balance* OR P&S OR cancel* OR refer* OR consum* OR promot* OR adver* OR market* OR sign* OR host*)—to identify documents evidencing IDIQ payments to affiliates.

Rocket's proposal is reasonable, yet IDIQ refuses to provide a counterproposal.

IDIQ states Rocket's proposed search terms are overbroad, but has no basis to say so, as it has outright refused to use the searches in its initial collection or to test the terms and provide hit counts so Rocket can assess the veracity of IDIQ's overbreadth objection.

IDIQ protests that it is not required to share the search terms it is using or the data sources from which it is collecting, but Courts routinely demand parties share their search terms when negotiating the scope of a production, especially when there is a dispute over the scope of document requests.[1] Sharing of search terms is the most basic element of ESI negotiations, and precisely what was envisioned by the Court's March 21 Order. At this stage, however, given its obstructionist conduct and refusal to have good faith negotiations (as further evidenced by it distortions of the record below), the Court should instruct IDIQ to use Rocket's proposed search terms for its production of responsive documents.

<u>Finally, this Court should (once again) order that IDIQ produce (a) communications with affiliates related to the Rocket Credit Scores name and logo (RFP Nos. 33-35); (b) documents evidencing its payments to affiliates for activities related to Rocket Credit Score (RFP Nos. 36-37); and (c) documents relating to its monitoring efforts of the affiliates (RFP Nos. 60)</u>. These were the same RFPs that were in dispute at the Hearing, and the RFPs at which Rocket's proposed search terms were directed. IDIQ's communications with affiliates are critical to Rocket's trademark infringement counterclaims, and the payment documents are important to proving damages. This Court already ordered that IDIQ negotiate with Rocket to search for and produce documents in response to these RFPs. IDIQ now states (for the first time) it is producing some communications, but will not share with Rocket in a coherent manner any aspect of its efforts, while it continues to refuse to search for and produce documents responsive to the other RFPs.

Rocket respectfully requests that this Court order IDIQ to (1) search for documents using Rocket's proposed search terms; and (2) produce responsive documents by April 24.

---

[1] *See, e.g.*, *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1109–11 (D. Ariz. 2019); *Littlefield v. NutriBullet, L.L.C.*, 2017 WL 10439692, at *4, 6 (C.D. Cal. Dec. 20, 2017); *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *4 (N.D. Cal. Feb. 25, 2016).

## II. <u>IDIQ's Position:</u>

IDIQ fully complied with the Court's Order that IDIQ provide Rocket Mortgage with the names and addresses for every third-party marketing affiliate that used the Rocket Credit Scores branding at any time, as well as all contracts with the marketing affiliates that used Rocket Credit Scores branding, to the extent possible. Such information was timely produced on or before March 31, 2023. To the extent IDIQ was unable to locate certain contracts with third-party marketing affiliates, IDIQ agreed to continue its search for contracts with third-party marketing affiliates it has been unable to locate and produce those contracts to the extent they are in IDIQ's possession, custody, and control.

Since producing all of the affiliate information and contracts, IDIQ's focus has been on searching for and identifying relevant and responsive communications between IDIQ and its affiliates concerning the Rocket Credit Scores brand, as directed by this Court. IDIQ is in the process of producing those communications and made its initial production of these communications on April 12. IDIQ will continue to timely produce these documents as they are located and processed. The document search has been an extremely time-consuming process given the substantial volume of documents at issue.

The Court directed the parties to meet and confer to narrow the scope of Rocket Mortgage's extraordinarily broad requests for production, which IDIQ has done. Rocket Mortgage, on the other hand, has hamstrung IDIQ throughout the process yet has the audacity to complain. Despite IDIQ's repeated requests, Rocket Mortgage has steadfastly refused to provide any guidance on narrowing the scope of the relevant RFPs to streamline IDIQ's document search and speed up the production process. Two days after the Hearing (and during the time IDIQ was gathering the affiliate information and contracts for production), Rocket Mortgage provided a proposed list of ESI search terms purportedly pertaining to "the RFPs in dispute at the hearing (i.e. RFP Nos. 26, 28, 30, 32, 38, 52, 60)." (March 23 Correspondence from Louis Lobel.) On Friday, March 24, counsel for IDIQ responded it would consider the proposed search terms and provide a response the following week. The next Tuesday, IDIQ advised Rocket Mortgage it was confirming the volume of

hits for certain search terms so IDIQ could determine a reasonable starting point to locate documents responsive to Rocket Mortgage's expansive requests and offered to discuss the proposed search terms the same week.[2]

Rocket Mortgage responded that "[o]ur proposed search terms" "are tailored to seek only relevant communications" and neither offered nor agreed to narrow the RFPs. Thereafter, on March 30, counsel for the parties participated in a telephonic conference to discuss the RFPs. During the conference, counsel for IDIQ reiterated its request that Rocket Mortgage narrow the scope of the RFPs so the parties would have the necessary context to productively discuss relevant keyword searches. Counsel for Rocket Mortgage once again refused to narrow the scope of the RFPs, insisting without explanation that its proposed terms fully addressed the documents to produce.

During the meet and confer process, Rocket Mortgage has insisted the Court ***ordered*** IDIQ to agree on search terms. This is not the case. At the March 21 hearing (the "Hearing"), the Court indicated the parties should meet and confer to attempt "narrowing the scope of the RFPs" regarding IDIQ's affiliate marketers in light of the Rocket Mortgage's extremely broad requests for "all documents and communications" relating to IDIQ's affiliate marketers. (Hearing Tr. 46:01-08; *see also* 47:22-23 ["So my direction is – is that the scope is going to be narrowed . . . to communications between IDIQ and its affiliates on -- on branding that involves the Rocket logo at issue here."].) Rocket Mortgage's repeated attempts to mischaracterize the Court's direction is gratuitous and has been accompanied by unwarranted accusations of intentional delay despite IDIQ's good faith efforts. For its part, Rocket Mortgage has refused to discuss narrowing the scope of the RFPs at issue and has never – despite three telephonic conferences between the parties – consulted with IDIQ regarding the RFP responses that it claims are deficient through this Motion.

IDIQ explained at the parties' March 30 conference (and in its post-conference status

---

[2] March 28 Email from Asad Karamally ("Specifically, we look forward to discussing Rocket Mortgage's position regarding the scope of relevant communications with IDIQ's marketing affiliates given that – as Judge Liburdi noted at the hearing – Rocket Mortgage's request for "all" communications is extremely broad. (Hearing Tr. 41:14).")

report) it was necessarily focused on locating and producing its contracts with marketing affiliates on the timeline ordered by the Court and would then turn to the search for relevant and responsive communications. Since that time, IDIQ assured Rocket Mortgage that it was working diligently to locate, ingest, and process documents and communications that may be responsive to Rocket Mortgage's requests. (April 5 Email from Asad Karamally ["As I mentioned on Thursday, our initial searches produced a large volume of data that would take some time to ingest and determine what categories of information are included in the results before we are able to meaningfully respond to your proposal."]).

IDIQ advised Rocket Mortgage it would provide a hit count for its initial search terms on or before April 7. IDIQ continued to work diligently on this project and on April 6, earlier than promised, IDIQ advised Rocket Mortgage that that its initial searches were based on the terms "rocket mortgage", "!rocketcredit!", and "rocket credit", that it was analyzing the data to confirm the extent to which the "hits" included communications with affiliates regarding Rocket Credit Scores, and that it intended to run an additional search for the term "my3scores.co." IDIQ also advised Rocket Mortgage that its initial search terms produced hundreds of gigabytes of data compromising 33,924 documents. During the parties' April 7 conference, IDIQ further advised that, based on an initial review of the documents, IDIQ will also likely run a keyword search for the term "rocket." Rocket Mortgage responded by demanding that IDIQ provide additional information immediately and threatened to refuse to discuss its own discovery responses until IDIQ agreed its terms.

IDIQ reminded Rocket Mortgage it was working as quickly as possible to understand the documents collected. The voluminous nature of the documents requires additional time to upload and process the documents once gathered. IDIQ is working as quickly and diligently as possible to review and produce the documents. Since the parties' April 7 conference, IDIQ has run additional searches for the terms "my3scores", "rocketcreditscores", and "rocket", and the resulting data is being processed.

Notwithstanding IDIQ's efforts, Rocket Mortgage continues to insist that IDIQ agree upon certain search terms. IDIQ reminded Rocket Mortgage that the parties had not been

ordered to agree on search terms, but that it nonetheless participated in the discussions regarding search terms in good faith and promptly communicated with Rocket Mortgage regarding its document search efforts. Rocket Mortgage yet again accused IDIQ of dragging its feet, demanded that IDIQ provide Rocket Mortgage the precise sources of information which had been searched so Rocket Mortgage could evaluate whether IDIQ's search was adequate, and falsely asserted that the parties had been ordered to agree on search terms. Given Rocket Mortgage's unreasonable timelines, extreme hostility, and refusal to narrow the scope of the pertinent RFPs, IDIQ determined that further discussions regarding Rocket Mortgage's proposed search terms would be unproductive and agreed to supplement its responses to the RFPs which are at issue. IDIQ provided supplemental responses to the RFPs cited in Rocket Mortgage's correspondence regarding the search terms on April 7.

As of the parties' most recent conference on April 10, it appeared Rocket Mortgage had not even reviewed IDIQ's supplemental responses, and no deficiencies in those responses were raised. Tellingly, ***Rocket Mortgage's position outlined above fails to address IDIQ's supplemental responses to the RFPs which the search terms were intended to address***. In fact, IDIQ's supplemental responses to the RFPs cited in Rocket Mortgage's search term proposal provide all relevant requested information. Instead, Rocket Mortgage's position in this Motion cites RFPs 33-37 and 60. Any discussion of RFPs 33 to 37 is premature, these RFPs were not cited in Rocket Mortgage's email regarding its proposed search terms and were not raised during any one of the parties three telephonic conferences since then. RFP No. 60[3] is plainly overbroad, and Rocket Mortgage has refused to narrow the scope of this RFP in any way or explain why all documents within this request are relevant and proportional to the needs of the case.[4] Moreover, Rocket

[3] *See* RFP No. 60 ("All documents of any audit, review, quality control, monitoring, oversight due diligence, compliance review or quality assurance that You conducted of any affiliate, partner, or agent who You have authorized to advertise, promote, market, display, or sell Your services in connection with the Rocket Credit Scores name or logo.")

[4] *E.g.*, *Briggs v. Cnty. of Maricopa*, No. CV-18-02684-PHX-EJM, 2021 WL 1192819, at *5 (D. Ariz. Mar. 30, 2021) ("The Court finds that these requests are overly broad and not sufficiently tailored to request specific documents or communications, thus requiring Slepian Smith 'to engage in mental gymnastics to determine what information may or may not be remotely responsive.'")

Mortgage's many accusations that IDIQ is "dragging its feet" on producing information and allegedly prejudicing Rocket Mortgage are nonsensical given that Rocket Mortgage has produced a grand total of ***33 documents*** in this action, all of which were already in IDIQ's possession or are publicly available.

Finally, the cases cited by Rocket Mortgage are inapposite because IDIQ promptly met and conferred in good faith and supplemented its RFP responses. *See Joshua David Mellberg v. Will*, 386 F. Supp. 3d 1098, 1109–11 (D. Ariz. 2019) (observing that plaintiff failed to fairly engage in the discovery process); *Littlefield v. NutriBullet*, 2017 WL 10439692, at *4, 6 (C.D. Cal. Dec. 20, 2017) (ordering defendant to run certain search terms after the court determined that defendant's search for documents was not reasonable); *Salazar v. McDonald's*, 2016 WL 736213, at *4 (N.D. Cal. Feb. 25, 2016) (primarily addressing defendant's argument that it would not produce documents until after the deposition of the custodian had been taken); *Youngevity Int'l v. Smith*, 2019 WL 11274846 (S.D. Cal. May 28, 2019) [5] (underlying Report and Recommendation observes "Courts have determined that responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.")

IDIQ thus respectfully requests the Court deny this Motion, which has only served to further delay IDIQ's production efforts, on the following grounds: (1) IDIQ was not ordered to agree on search terms; and (2) Rocket Mortgage has failed to meet and confer with IDIQ in good faith regarding any remaining deficiencies in IDIQ's responses, as LRCiv 7.2 requires. *See ImprimisRx v. OSRX.*, 2022 WL 17824006, at *2 (S.D. Cal. Dec. 19, 2022) (finding "there is no fundamental discovery requirement that a party provide its ESI search terms in litigation" and that "'[d]iscovery into another party's discovery process is disfavored,' and 'requests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad

---

[5] RM's citation to this case was included in the draft of RM's position initially provided to IDIQ but was removed by RM prior to filing because RM evidently realized it supports the reasonableness of IDIQ's position.

infinitum.'")

IDIQ will continue to work diligently to produce communications with its third-party marketing affiliates and, to this end, made its initial production of these communications on April 12, with a rolling production continuing thereafter.

DATED this 13th day of April 2023.

*/s/Robert D. Carroll*
Robert D. Carroll (*pro hac vice)*
W. Kyle Tayman (*pro hac vice*)
Todd Marabella (*pro hac vice*)

**GOODWIN PROCTER LLP**

David E. Funkhouser III
Jessica A. Gale
**SPENCER FANE LLP**

Attorneys for Defendant Rocket Mortgage, LLC

**RUTAN & TUCKER, LLP**
*/s/Lisa N. Neal (with permission)*
Hani Z. Sayed (admitted *pro hac vice*)
Lisa N. Neal (admitted *pro hac vice*)
Meredith L. Williams (admitted *pro hac vice*)
James R. Burrell (admitted *pro hac vice*)
AND
**THORPE SHWER, PC**
William Thorpe (No. 005641)
Bree G. Nevarez (No. 035671)

Attorneys for Plaintiff Identity Intelligence Group, LLC d/b/a IDIQ

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule of Civil Procedure 7.2(j), counsel for the parties hereby certify that they have attempted to resolve the dispute set forth herein and, after sincere efforts and personal consultation, have been unable to do so.

DATED this 13th day of April 2023.

*/s/Robert D. Carroll*
Robert D. Carroll (*pro hac vice)*
W. Kyle Tayman (*pro hac vice*)
Todd Marabella (*pro hac vice*)

**GOODWIN PROCTER LLP**

David E. Funkhouser III
Jessica A. Gale
**SPENCER FANE LLP**

Attorneys for Defendant Rocket Mortgage, LLC

**RUTAN & TUCKER, LLP**
*/s/Lisa N. Neal (with permission)*
Hani Z. Sayed (admitted *pro hac vice*)
Lisa N. Neal (admitted *pro hac vice*)
Meredith L. Williams (admitted *pro hac vice*)
James R. Burrell (admitted *pro hac vice*)
AND
**THORPE SHWER, PC**
William Thorpe (No. 005641)
Bree G. Nevarez (No. 035671)

Attorneys for Plaintiff Identity Intelligence Group, LLC d/b/a IDIQ